THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 7:25-CV-973-D-BM

| | | |
|---|---|---|
| JASON HEWETT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | ) ) ) | |
| Plaintiff | ) | **MOTION AND MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION** |
| v. | ) | **TO ENFORCE SETTLEMENT** |
| | ) | **AGREEMENT OR, IN THE** |
| ENJOY THE CITY NORTH, INC | ) | **ALTERNATIVE, FOR DISMISSAL** |
| | ) | |
| Defendant | ) | |

**MOTION AND MEMORANDUM IN SUPPORT OF MOTION
TO ENFORCE SETTLEMENT AGREEMENT
OR, IN THE ALTERNATIVE, FOR DISMISSAL**

**<u>MOTION</u>**

Plaintiff Jason Hewett, by and through counsel, and pursuant to this Court's inherent power to summarily enforce settlement agreements made between the parties to this litigation, hereby moves the Court for an order enforcing the settlement agreement entered into by the parties in this litigation, Plaintiff Jason Hewett (Mr. Hewett) and Defendant Enjoy the City North, Inc. d/b/a SaveAround (SaveAround). In support of this Motion, Mr. Hewett relies upon the pleadings in this matter, as well as the incorporated Memorandum in Support and exhibits thereto. In the alternative, Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff, hereby moves to voluntarily dismiss with prejudice his claims against Defendant in this matter.

WHEREFORE, Plaintiff respectfully requests that the Court grant this Motion to Enforce Settlement Agreement, or, in the alternative, dismiss this action in its entirety with prejudice.

## MEMORANDUM IN SUPPORT

After substantial negotiations and good faith settlement efforts between the Parties, the Parties memorialized via email on December 30, 2025 the terms of their settlement agreement resolving all claims against each other in this litigation. The Parties negotiated and agreed, via email, to a settlement that involved (1) no money changing hands, (2) a complete release, and (3) a dismissal with prejudice of the litigation. That email, sent by SaveAround, but which SaveAround now seeks to evade, explicitly confirmed that SaveAround was willing to settle the litigation on those three terms.

SaveAround, which apparently has buyer's remorse and wants Mr. Hewett to pay SaveAround, has decided to renege on the agreement and demand money from Mr. Hewett for dismissal of the parties' claims against each other and this litigation. In support of its position, SaveAround attempts to manufacture a purported disagreement as to language in a non-material confidentiality provision in a formal agreement memorializing those essential terms to argue that the parties (allegedly) never agreed to anything and that the parties' formalization of their December 30 agreement were allegedly just counteroffers. It does so despite a January 7 admission that confidentiality "was not part of our initial discussion," and thus was never a material term of the parties' agreement.

Mr. Hewett now moves to enforce the terms that the parties agreed to on December 30, 2025. SaveAround's assertions are meritless, and they do not provide a basis for avoiding the terms of the Parties' agreement, which became enforceable when SaveAround tendered its acceptance and understanding of the material terms on December 30, 2025. Mr. Hewett has been forced to file this motion because, rather than abide by the terms of the Parties' binding agreement, SaveAround now wants to be paid. Court intervention is therefore required to enforce

2

the terms of the Settlement Agreement.

Alternatively, the Court should dismiss this action with prejudice according to the terms of the parties' agreement, including releases of claims with no monetary payment, as the parties agreed. Rule 41(a)(2) permits voluntary dismissals at any time "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

Pursuant to its inherent authority and principles of contract, this Court should grant this Motion to Enforce the Settlement Agreement, or, in the alternative, dismiss this action in its entirety with prejudice.

## FACTS

This is a putative class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and related state law claims. Prior to settlement negotiations in December of 2025, the parties engaged in discovery, including written discovery and document production. In late December 2025, the parties exchanged Rule 408 correspondences regarding potential settlement and resolution of this matter, including a telephone call between Plaintiff and Defendant's counsel. During this telephone call, Plaintiff's counsel proposed settlement terms consisting of three material provisions: no money changing hands, complete releases, and dismissal of the litigation with prejudice.

On December 23, 2025, Defendant's counsel emailed Plaintiff's counsel and requested additional time to discuss this telephonically tendered proposal with her client. (Ex. A at 1.) Plaintiff's counsel agreed. (*Id.*) On December 30, 2025, Defendant's counsel sent the following email to Plaintiff's counsel, which constituted a binding agreement accepting the Plaintiff's offer with three material terms:

SaveAround is willing to settle the case on the terms we understand Mr. Hewett to have

3

proposed: no money changing hands, a complete release, and dismissal with prejudice. Please let me know if you will send us a draft settlement agreement. If not, we will prepare one. In the meantime, we would like to stop working on the case. Our deadline to disclose experts is January 7. Will Mr. Hewett agree to push that deadline to January 21 to allow time to finalize the settlement? That will allow us to stop work. If something should fall through, we can ask the court to reset the discovery schedule.

(*Id*. at 2-3.) Plaintiff's counsel agreed to extend the expert disclosure deadline as requested. (*Id.* at 3.) Later that same day, acting with Defendant's agreement, Plaintiff's counsel transmitted a draft settlement agreement that formalized the terms the parties agreed to, which such agreement included a standard, albeit nonmaterial, confidentiality provision. (*Id.* at 6.) Defendant's counsel acknowledged receipt. (*Id.*) On January 5, 2026, Defendant's counsel circulated a revised draft that included, among adding other additional non-material provisions prohibiting Mr. Hewett from signing up for calls in the future, removing the confidentiality clause. (*Id.* at 6-7.) On January 6, 2026, Plaintiff's counsel circulated a further revised draft that added back the confidentiality and non-disparagement provisions. (*Id.* at 7.)

On January 7, 2026, Defendant's counsel rejected these additional, non-material provisions, stating and confirming that they were not part of the essence of the agreement that the parties negotiated and agreed to: "SaveAround is not willing to agree to confidentiality and non-disparagement terms. Those terms were not part of our initial discussion." (*Id.* at 8.) On January 10, 2026, Plaintiff's counsel inquired to see if there was a compromise of language that would be acceptable to the Defendant. (*Id.* at 9-10.) On February 11, 2026, after significant delay, and multiple follow ups, and despite agreeing to the essential terms of the agreement on December 30, Defendant's counsel stated that "SaveAround is not willing to agree to the proposed confidentiality provision, so it rejects the settlement proposal." (*Id.* at 14-15.) Defendant's counsel further stated that Defendant would "negotiate a number that Mr. Hewett

4

can pay to avoid a motion for sanctions," reflecting that its position was not driven by any

purported disagreement as to confidentiality but instead a desire to get money from Mr. Hewett.

(*Id.* at 17.) On February 13, 2026, Plaintiff's counsel advised Defendant's counsel that the parties

had reached a binding agreement on the material terms and that Plaintiff intended to move to

enforce that agreement. (*Id.* at 18.) Defendant's counsel responded by claiming that "Mr. Hewett

rejected that offer by insisting on confidentiality, which our client never accepted," and that

Defendant "is not willing to go back to the original offer at this point." (*Id.* at 18-19.)

This motion follows.

## LAW AND ARGUMENT

### 1. **This Court has the Authority to Enforce the Parties' Agreement.**

Federal courts have the inherent power to summarily enforce settlement agreements made

between the parties involved in litigation before them. *Young v. Federal Deposit Insurance

Corp.*, 103 F.3d 1180, 1194 (4th Cir. 1997). "As a matter of policy, settlement benefits parties

and conserves judicial resources, and is therefore favored by the Fourth Circuit." *Clayton v.

Ameriquest Mortg. Co.*, No. 1:02-CV-415, 2004 WL 734978, at *2 (M.D.N.C. Apr. 5, 2004),

*aff'd*, 117 F. App'x 301 (4th Cir. 2004); *see also, e.g.*, *Central Wesleyan Coll. v. W.R. Grace &

Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (explaining that, to benefit parties and conserve judicial

resources, "[c]ourts should foster settlement"). Importantly, "when a settlement is reached in a

case pending before it, a trial court has the authority to enforce the terms of that settlement."

*Clayton*, 2004 WL 734978, at *2; *see also Columbus–America Discovery Group v. Atlantic

Mutual Insurance Co.*, 203 F.3d 291, 299 (4th Cir. 2000), *cert. denied*, 531 U.S. 918 (2000);

*Fairfax Countywide Citizens Ass'n v. County of Fairfax, Va.*, 571 F.2d 1299, 1304 (4th Cir.

1978), *cert. denied*, 439 U.S. 1047 (1978). If it is clear that an agreement exists between parties

and its terms and conditions can be determined, as is the case here, the court may enforce it summarily, and without the need for a hearing. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541-542 (4th Cir. 2002); *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988) (noting that "[t]rial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing"). A party having misgivings or "second thoughts" about the wisdom of a valid agreement or its results does not render the agreement unenforceable. *Hensley*, 277 F.3d at 540; *see also Young*, 103 F.3d at 1195 ("[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement."); *Harmon v. Frangis*, 2009 WL 1383378, 676 S.E.2d 670 (N.C. Ct. App. 2009) (finding claim that a party "changed her mind" insufficient to render agreement invalid); *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 534 S.E.2d 653, 655 (2000) (enforcing agreement to settle case); *accord Ellerbe v. Saunders*, 137 F. Supp. 3d 812, 816 (M.D.N.C. 2015) (enforcing agreement where plaintiff "developed second thoughts about his agreement and began to conjure up additional terms" after an agreement was reached).

"[T]o grant a motion to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Smith-Phifer v. City of Charlotte*, 118 F.4th 598, 610 (4th Cir. 2024) (cleaned up). "When considering a motion to enforce a settlement agreement, the district court applies standard contract principles." *Topiwala v. Wessell*, 509 Fed. Appx. 184, 186 (4th Cir. 2013) (citing *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 380 (4th Cir. 2004)). Under North Carolina law, an enforceable agreement requires that the parties have a meeting of the minds on its material terms. *Elliott v. Daniel*, 153 N.C. App. 200, 569 S.E.2d 33 (2002). All of these factors are present in this case. A material breach of a contract is one that "one that substantially

6

defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Yang Real Est. Invs., LLC v. Affordable Mini Storage of Newton, LLC*, 920 S.E.2d 231, 237 (N.C. Ct. App.), review denied, 923 S.E.2d 242 (N.C. 2025).

2. **The Parties Agreed to Settle This Matter on Specific, Material Terms.**

The parties here agreed to settle this litigation on specific, material terms, namely, that they would agree to a mutual dismissal of their claims against each other, with prejudice, and without any monetary payment. Via email on December 30, Attorney Kelly Dagger stated that "SaveAround is willing to settle the case on the terms we understand Mr. Hewett to have proposed: no money changing hands, a complete release, and dismissal with prejudice." Plaintiff's counsel responded that same day with a proposed settlement agreement incorporating the accepted material terms, in Defendant's own words, "no money changing hands, a complete release, and dismissal with prejudice."

The parties reduced that understanding to writing in the email thread attached herein as Exhibit A, and counsel for the Defendant directed Plaintiff's counsel to draft the instant agreement, which included non-material confidentiality and non-disparagement provisions. Those provisions were not material terms to the agreement (the material terms being (1) no money changing hands, (2) a complete release, and (3) a dismissal with prejudice), but were included as part of a standardized form release and settlement agreement that Plaintiff's counsel sent to Defendant's counsel. Thereafter, Defendant had issues with both the confidentiality and non-disparagement provisions, which the parties attempted to resolve and attempt to propose alternative language. Despite these efforts, on February 11, 2026, after multiple attempts to ascertain what the hold up with the language was, Defendant's counsel instead emailed and

7

stated that it was "rejecting" the parties' contractual agreement, and instead demanded monetary consideration from the Plaintiff, despite that not being the essence of the agreement that the parties negotiated, bargained for, and accepted. Indeed, it was Defendant itself who attempted to make confidentiality a material term after the fact, and after the parties had reached an agreement as to the three essential and material terms, (1) no money changing hands, (2) a complete release, and (3) a dismissal with prejudice.

Where, as here, the parties have reduced an agreement to writing that by its plain terms settles the underlying lawsuit, "the record supports summary enforcement of the Settlement Agreement." *Bryant v. Eastwood Constr., LLC*, No. 1:23-CV-637, 2024 WL 4332553, at *8 (M.D.N.C. Sept. 27, 2024), *appeal dismissed*, No. 24-1960, 2024 WL 5500593 (4th Cir. Nov. 13, 2024). In such a case, "Clearly, a settlement d[oes] exist." *Petty*, 849 F.2d at 133. Courts have applied the reasoning set forth above and enforced similar expressions of understanding between parties, and this Court should do the same here. *See, e.g.*, *Dean v. Jones*, No. 5:16-CV-3109-FL, 2022 WL 7454945, at *2-3 (E.D.N.C. Oct. 13, 2022) (enforcing settlement agreement where the parties reduced their agreement to writing in a "memorandum of understanding," noting: "The memorandum of understanding will be entered into the record as a consent judgment."); *USA Trouser, S.A. de C.V. v. Andrews*, No. 1:11-CV-00244-MR-DLH, 2016 U.S. Dist. LEXIS 3038, at *3-4 (W.D.N.C. Jan. 11, 2016) ("[T]he Court concludes as a matter of law that the MOU constitutes an enforceable settlement agreement between the parties to this action. Accordingly, the Court by its inherent powers can enter an Order and Judgment to enforce that agreement."); *Bell v. Dep't of Homeland Sec.*, No. 3:16-CV-00732-RJC-DSC, 2019 WL 5700778, at *1 (W.D.N.C. Nov. 4, 2019), *report and recommendation adopted*, No. 3:16-CV00732-RJC-DSC, 2019 WL 7374676 (W.D.N.C. Dec. 31, 2019) ("The material terms of the

8

agreement are readily discernable on the face of the Memorandum of Settlement.").

Here, on December 30, 2025, SaveAround confirmed that it was "willing to settle the case" on specific terms outlined in the email on what SaveAround admitted were "the terms we understand Mr. Hewett to have proposed: no money changing hands, a complete release, and dismissal with prejudice." Despite being the party with the power of acceptance, SaveAround did not attempt to add in any additional terms, said nothing of confidentiality, at all, and provided the Plaintiff's counsel to send a "draft settlement agreement" formalizing the parties' essential bargain here, which Plaintiff's counsel did promptly. Under the plain terms of the email, the email is a binding agreement. The email explicitly confirmed that SaveAround was "willing to settle the case." It does not contain preconditions to settlement, nor speak anything about confidentiality or not, but instead speaks in present tense, and left open the option of either party to draft a formal settlement agreement to memorialize the terms. As a result, the parties' email conversation is akin to a memorandum of understanding and is enforceable as a matter of law. Thus, the Court should grant Plaintiff's Motion and enforce the binding December 30 email.

### 3. Confidentiality Was Not a Material Term, and No Counteroffers Were Made.

As is evident from the email thread attached herein as Exhibit A, SaveAround attempts to avoid enforcement of the parties' agreement to release each other and terminate the litigation with prejudice without any money changing hands by arguing that the parties' disagreement about an allegedly "material" term in the formal agreement allegedly resulted in a counteroffer that terminated the power of acceptance. Not so.

As an initial matter, as outlined above, in accepting the Plaintiff's offer on December 30, 2025, SaveAround accepted the offer as Plaintiff presented it and in full, demonstrating a meeting of the minds after an offer, acceptance, and with consideration. That acceptance of the

9

Plaintiff's offer did not expressly contemplate the parties' position on confidentiality. SaveAround did not say anything about confidentiality, nor provide any indication that it intended to addressed that provision in the parties' formal agreement, an agreement that SaveAround had the Plaintiff draft. For that matter, it did not make acceptance contingent on a formal agreement *at all*. SaveAround's acceptance did, however, expressly stipulate to the fact that *no money was to change hands*. In fact, SaveAround's position that the confidentiality provision in the parties' formalized settlement agreement was a material term is belied by the fact that SaveAround now attempts to renege on one of the three material terms *it explicitly agreed to*, no money changing hands, by using a manufactured dispute over an insignificant, non-material term in the formal agreement to attempt to squeeze a payment out of Mr. Hewett, all despite Plaintiff's counsel stating that Plaintiff was willing to sign SaveAround's January 5 agreement, which removed the subject provision.

As explained above, in order to enforce a settlement agreement, the Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Smith-Phifer*, 118 F.4th at 610. In determining whether the parties reached a "complete agreement," a court must consider if it "can determine the agreement's material terms." *Id.* The December 30 email is quite clear that the parties reached a complete agreement because the material terms were outlined in the email, and no part of the email indicated that acceptance was contingent on any provision in the formal agreement. As such, this Court can find that the parties reached a complete agreement on December 30 and is easily able to determine its terms and conditions for the reasons set forth below.

*First,* the email contains an unequivocal expression of assent to the specific settlement terms as SaveAround understood them. The opening sentence, "SaveAround is willing to settle

10

the case on the terms we understand Mr. Hewett to have proposed," is a clear, present-tense manifestation of intent to be bound and a straightforward statement of agreement. The email then precisely identifies the three material contractual terms: "no money changing hands, a complete release, and dismissal with prejudice." By articulating these specific terms, SaveAround demonstrated mutual understanding of the bargain and confirmed its acceptance of exactly what Plaintiff proposed. Those are the core settlement terms, stated with enough definiteness to be easily determinable and enforceable under *Smith-Phifer's* two prong test. *See Campbell v. Adkisson, Sherbert & Assocs.*, 546 F. App'x 146, 153 (4th Cir. 2013) (holding that similar agreement on material terms in email created an enforceable agreement). Moreover, the statement "we would like to stop working on the case" and the request to extend imminent case deadlines further demonstrates reliance on the acceptance of the essential settlement terms as Plaintiff offered and SaveAround accepted. This is the behavior of a party that believes settlement has been reached, not one still engaged in negotiations. *See id.* at 151. The request to extend the expert disclosure deadline "to allow time to finalize the settlement" further demonstrates SaveAround's understanding that the agreement was complete and only work to "finalize the settlement" remained, and does not contemplate additional negotiations or terms.

*Second*, the email's request for a draft settlement agreement is consistent with acceptance and formalization of three agreed essential terms, not further negotiation as to any other allegedly additional "essential" terms, a counteroffer, or a condition precedent. Critically, the email does not mention confidentiality as part of the three articulated essential terms, suggesting it was not a condition of acceptance. Moreover, the absence of any mention of confidentiality in the outlined terms indicates it was not a condition precedent to acceptance. *Cf. Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, No. 14 CVS 2599, 2016 WL 393644, at *4 (N.C. Super.

Jan. 29, 2016) (holding confidentiality was a material term when it was included in the parties'

terms sheet). And, the willingness to proceed with Plaintiff drafting the agreement without

mentioning confidentiality suggests that the parties' positions on confidentiality was not

considered a fundamental aspect of the settlement, particularly as the Plaintiff subsequently

agreed to SaveAround's confidentiality provision language. *See Campbell*, 546 F. App'x at 151

("Prospect's willingness to accept ASA's revision to that term, without demanding additional

consideration, indicated to the court that, from Prospect's perspective, the choice-of-law and

venue provisions were not material terms.").

What's more, under North Carolina law and general contract principles, requesting

memorialization of already-agreed terms does not negate acceptance. For example, in *N.*

*Carolina Nat. Bank v. Wallens*, the court analyzed language stating that a letter would serve as "a

memorandum agreement until proper complete documents can be drawn up to consummate this

transaction." 217 S.E.2d 12, 14 (N.C. App. 1975). The court held this language did not negate an

existing contract, finding that "execution of a later agreement was not a condition precedent to

any contractual rights which might otherwise pertain." *Id.* at 15. So too here. The question,

"Please let me know if you will send us a draft settlement agreement. If not, we will prepare one"

presumes the existence of a binding agreement and addresses only the ministerial and logistical

task of reducing it to writing. This type of language does not defeat formation, particularly as the

parties agreed to the essential terms of the agreement. SaveAround offered to have Plaintiff draft

the agreement itself if Plaintiff preferred, and which Plaintiff did, a clear indication that the deal

was done and only documentation remained. Nor did SaveAround use any language to indicate

that they were making the execution of a formal agreement a condition precedent to formation.

Indeed, SaveAround's email did not use conditional language, such as that the parties'

agreement would be "subject to" or "contingent upon" the execution of a settlement agreement. To the contrary, it expressed acceptance as to those terms, full stop. As the *Wallens* court explained, "reference to a more 'complete' document does not necessarily indicate that material portions of the agreement have been left open for future negotiation. It could mean only that immaterial matters, which are of no consequence, will be added to complete the agreement." *Id.* at 15. "Where the evidence is sufficient to support plaintiff's contention that a definite . . . agreement was made by the parties, the contract is complete even though the parties contemplated reducing the agreement to writing." *Kornegay v. Aspen Asset Grp., LLC*, 693 S.E.2d 723, 731-32 (N.C. App. 2010). The determinative question is whether the parties intended the writing as a "mere memorial" of an agreement already made versus ongoing negotiations where "the writing is to be the contract." *Id.* at 731. Here, the parties reduced the essential terms of their agreement to writing without the use of contingent or conditional language, indicating that the confidentiality provision was not a material term, nor was the parties' agreement to material terms conditional on the execution of the formalized agreement itself.

Indeed, to this end, the parties' disagreement about the language of the formal agreement does not transform each draft into a counteroffer. Defendant's counsel admitted in her January 7 email that confidentiality was "not part of our initial discussion," and thus was not a material term. In fact, it's evidence that the disagreement as to the confidentiality provision in the agreement that Defendant permitted the Plaintiff to draft is simply an unaccepted counteroffer about a nonmaterial term, not a material term left open. In such case, negotiations about such nonmaterial terms do not vitiate an earlier final agreement. *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 n.1 (4th Cir. 1991). Indeed, were there any additional question as to what the parties agreed to, on January 7, SaveAround also tendered acceptance in the email by stating that

13

it was "fine with the edits in sections 1 and 2." As a result, the Court should find that confidentiality was not a material term and enforce the agreement as to the material terms the parties agreed upon: mutual releases, a dismissal of the litigation with prejudice, and without exchange of any money.

**4.** **In the Alternative, the Court Should Dismiss the Litigation with Prejudice**

In the alternative, this Court should dismiss the litigation, under the same terms as the Parties agreed on December 30, 2025, under Rule 41(a)(2). As the language of the Rule suggests, this Court has broad discretion to grant a motion for voluntary dismissal under Rule 41(a)(2). *Tefal v. Regal Ware, Inc.*, 172 F.3d 864 (4th Cir. 1998). As a general rule, motions for voluntary dismissal should be freely granted unless the nonmoving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Mann v. Edwards*, 37 F.R.D. 452, 454 (W.D.S.C. 1965). Courts in the Fourth Circuit have counseled that, like the amendment context, the voluntary dismissal context urges courts to "freely" grant such requests. *I.P. by Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 5535428, at *1 (E.D.N.C. Sept. 15, 2020). North Carolina federal courts have thus adopted a liberal policy in favor of dismissal under Rule 41(a)(2). *Garcia v. State Farm Fire & Cas. Co.*, No. 3:13-CV-560, 2015 WL 3746313, at *2 (W.D.N.C. June 15, 2015).

Here, Defendant will not suffer plain legal prejudice as a result of the dismissal that Plaintiff seeks in this motion. Defendant would get precisely the same bargain it agreed to on December 30, a mutual dismissal of claims in the litigation without needing to pay anything to the Plaintiff. And it would do so without agreeing to any sort of confidentiality provision which it was unwilling to agree to, nor without being bound to any other nonmaterial term in the parties' proposed agreement, including choices of law and forum provisions or need to file any

14

additional documents to secure dismissal of the action. Particularly as Defendant already agreed to a dismissal of the litigation with prejudice and the parties have conducted no additional litigation, motions practice, or discovery, Defendant cannot point to any conceivable prejudice by the Court ordering a dismissal of the action, with prejudice, precisely as the parties agreed.

Nor will Defendant's anticipated (false) rhetoric about allegedly "frivolous" claims or the presence of "consent" convert a procedural Rule 41(a)(2) motion into a merits adjudication. If Defendant truly believed it was entitled to judgment as a matter of law at the time it agreed to resolve the matter, it's perplexing why it previously agreed to relief on these very terms. There has been no additional discovery or other facts which might have come to light that would have dictated a different outcome or put the parties in a different posture. Simply put, SaveAround already agreed, knowing everything it now knows, to mutually dismiss this action back in December. No dispositive motion is pending. No substantive rights are being impaired. As such, there is no reason why the Court should allow Defendant's baseless allegations to defeat what it already knew and agreed to. Defendant's own agreement to dismiss the litigation actually underscores why dismissal with prejudice is appropriate and not prejudicial.

## **CONCLUSION**

Accordingly, the motion should be granted and the parties' claims and potential claims against each other dismissed with prejudice, with each party to bear its own fees and costs.

Date:  February 17, 2026

*/s/ Ryan P. Duffy*
Ryan P. Duffy
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, North Carolina 28012
704-741-9399
ryan@ryanpduffy.com


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
a@perronglaw.com
PA Bar. No. 333687
*LR 83.1(e) Special Appearance Counsel*

## CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.3(d)(1), the undersigned certifies that this brief does not

exceed 6,250 words and thus complies with this rule.

February 17, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.


February 17, 2026

> /s/ Andrew Roman Perrong
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com