THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 7:25-CV-973-D-BM

| | | |
|---|---|---|
| JASON HEWETT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | ) ) ) | |
| Plaintiff | ) | **REPLY IN SUPPORT OF MOTION** |
| | ) | **TO ENFORCE SETTLEMENT** |
| v. | ) | **AGREEMENT OR, IN THE** |
| | ) | **ALTERNATIVE, FOR DISMISSAL** |
| ENJOY THE CITY NORTH, INC | ) | |
| | ) | |
| Defendant | ) | |

**REPLY IN SUPPORT OF MOTION
TO ENFORCE SETTLEMENT AGREEMENT
OR, IN THE ALTERNATIVE, FOR DISMISSAL**

SaveAround's Opposition asks this Court to accept a contradiction. SaveAround concedes that its December 30, 2025 email identified three terms on which it was "willing to settle the case": "no money changing hands, a complete release, and dismissal with prejudice." SaveAround further concedes that it "does not oppose" dismissal of this action with prejudice. This concession narrows the dispute considerably. But SaveAround insists that the very same email that produced the dismissal was not binding as to the other two terms, no money and mutual releases, that appeared in the same sentence, in the same email, as part of the same deal.

SaveAround cannot have it both ways. The December 30 email was a single, integrated expression of assent to a bargain with three essential terms. SaveAround treats the email as authoritative when it yields a result SaveAround likes (dismissal of Mr. Hewett's claims) and as meaningless when it yields a result SaveAround does not like (mutual releases with no payment). But the three terms rise or fall together. If the email is nonbinding, SaveAround has no basis to contend dismissal is appropriate. If it is binding, as the parties' conduct confirms, then it is binding as to all three terms, including the mutual walk away and lack of payment that SaveAround now regrets. SaveAround's real grievance is not that no agreement was reached. It is that SaveAround changed its mind. That is precisely the kind of "buyer's remorse" that the Fourth Circuit has held cannot defeat an otherwise valid settlement. *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997). This Court should enforce the agreement the parties made.

**ARGUMENT**

1. **SaveAround's Position Is Internally Contradictory.**

The centerpiece of SaveAround's Opposition is that the December 30 email was an unenforceable "agreement to agree" that "required future agreement by both parties to reach a settlement." But SaveAround simultaneously argues for the fruit of that same email, dismissal of

1

Mr. Hewett's claims with prejudice, without acknowledging the tension in its position.

The December 30 email was not a mere agreement to agree nor some vague agreement to continue discussing a possible settlement. It used no conditional language and did not state that it would be subject to a future contract or agreement of additional terms between the parties beyond those already conveyed. It outlined the three essential terms as a package, "no money changing hands, a complete release, and dismissal with prejudice." SaveAround did not offer a one-way dismissal alone as it now concedes is proper. It did not offer a mutual dismissal with releases while still reserving the right to add other terms. It accepted all three terms together, as its understanding of the deal Mr. Hewett had proposed. If that email is too indefinite to create a binding agreement and was merely an "agreement to agree," as SaveAround contends, then there is no agreed-upon framework for dismissal *at all*, and SaveAround's concession dismissal is appropriate has no anchor. If, by contrast, the email reflects the parties' meeting of the minds on the terms that would end this litigation as to each party's claims, as the record demonstrates, then it reflects agreement on all three terms, not just the one SaveAround finds convenient.

SaveAround's attempt to sever dismissal from the rest of the deal ignores the basic principle that a settlement agreement is an integrated bargain. If the email is nonbinding, SaveAround cannot rely on it as a basis for expecting dismissal, and there is no agreed framework for ending the case at all. Mr. Hewett agreed to dismiss his TCPA claims with prejudice, and SaveAround agreed to the same, with no money changing hands. Neither party's concession makes sense in isolation. The Court should not permit SaveAround to pocket Mr. Hewett's dismissal while discarding the consideration that induced it. The email is binding as to the entire three-part bargain: dismissal with prejudice, mutual releases, and no money changing hands. SaveAround does not get to accept the parts it likes and discard the rest.

SaveAround argues that because the December 30 email contemplated a written settlement agreement, it was merely an "agreement to agree." But that argument conflates two different things. The parties had reached a substantive agreement on the essential terms of the settlement and merely planned to memorialize that agreement into a formal document. Under North Carolina law, the two are distinct. "Where the evidence is sufficient to support plaintiff's contention that a definite . . . agreement was made by the parties, the contract is complete even though the parties contemplated reducing the agreement to writing." *Kornegay v. Aspen Asset Grp., LLC*, 693 S.E.2d 723, 730 (N.C. App. 2010). The email makes clear that the parties were not "merely negotiating to see if they can agree upon terms;" it outlines an offer and acceptance of the three outlined terms itself. *Id.* Although Plaintiff respectfully submits that no evidentiary hearing is necessary to reach that conclusion, but if the Court concludes factual disputes remain, it should set an evidentiary hearing rather than deny enforcement outright.

The December 30 email did not use conditional language. SaveAround did not state that settlement was "subject to" execution of a written agreement or "contingent upon" further negotiation. *Contra id.* ("If the parties intend to signal their agreement only by the execution of a written document and do not intend to be bound unless and until all parties sign, no amount of negotiation or oral agreement, no matter how specific, will result in the formation of a binding contract."). It stated that SaveAround "is *willing* to settle the case on *the terms* we understand Mr. Hewett to *have proposed*." The translation here is clear: SaveAround tendered its "willingness," i.e. acceptance, to Mr. Hewett's "proposed terms," i.e. his offer. The word "willingness" signifies present tense acceptance of identified terms. *Willing*, Merriam-Webster Dictionary Online ("WILLING implies a readiness and eagerness to *accede to* or anticipate the wishes of another."; "done, borne, or *accepted* by choice or without reluctance."). "Willing"

3

represents acceptance of the terms that Mr. Hewett offered and SaveAround's counsel articulated understanding. What followed concerned the memorialization of that already accepted bargain.

What's more, the request to memorialize those terms in a written agreement made it clear that the parties had *agreed*, not merely reached an agreement to agree. The prompt to propose a draft agreement and request to stop working on the case are both the conduct of a party that has settled, not one having reached an agreement to agree. SaveAround tries to convert later negotiations over drafting language into proof that no settlement existed. But Defendant's own January 7 email defeats that argument. There, defense counsel wrote that confidentiality and non-disparagement "were not part of our initial discussions." That admission establishes that confidentiality was *not* among the essential terms exchanged and accepted on December 30. For that matter, each proposed language draft was not simply a series of counteroffers because SaveAround concedes that confidentiality was not an essential term. What's more, Plaintiff proposed compromise language and later fully agreed to Defendant's January 5 draft. Plaintiff now seeks to enforce the same mutual walk away agreement Defendant had already accepted.

SaveAround points to the phrase "[i]f something should fall through, we can ask the court to reset the discovery schedule" as evidence of uncertainty. But that hedging language is entirely consistent with an agreement itself. A party that says "if something should fall through" is not denying that a deal exists. To the contrary, it acknowledges that an agreement *exists* but might fall through for some unanticipated reason, such as material breach. All that language does is acknowledge the practical reality that deals sometimes unravel because someone breaches or attempts to breach them, as SaveAround here. That language does not negate formation. Rather, it simply reflects the same prudence any lawyer would exercise in managing a docket.

What changed here was Defendant's appetite for the deal it bargained for. Defendant's

4

own email reveals the real problem. Defendant's counsel stated that Defendant was "no longer willing to go *back to* a zero *settlement*" and instead wanted to "negotiate a number that Mr. Hewett can pay to avoid a motion for sanctions." That is classic buyer's remorse. A party cannot agree to a walk away, later decide it would rather seek money, and then retroactively recast the settled deal as a mere "agreement to agree" by manufacturing a dispute about a term in the written agreement it concedes was not a material term and never part of any bargain.

The material terms are neither uncertain nor missing. They are stated in Defendant's own words: "no money changing hands, a complete release, and dismissal with prejudice." The Court can readily enforce those terms. Defendant's contrary framing ignores that North Carolina law distinguishes between an essential term left open and a later dispute over memorialization. Here, the essential bargain had already been struck before the draft language about confidentiality was ever inserted. Defendant itself said so when it conceded those provisions "were not part of our initial discussion." Just as important, enforcement is the only result that preserves the bargain both sides actually made. Defendant's proposed alternative, dismissing only Plaintiff's claims with prejudice while leaving Defendant free to pursue claims against Mr. Hewett, does not preserve the deal. A "walk away" means each side walks away. Defendant accepted a zero-dollar resolution. It cannot concede that a dismissal of this litigation is appropriate in light of this language while still preserving some right to assert claims against Mr. Hewett.

## 2. SaveAround's Authorities Are Distinguishable

Next, SaveAround's counter-authorities are readily distinguishable. SaveAround relies heavily on *Garland* and *Tapp* to argue why the agreement here was merely an unenforceable agreement to agree. Neither has any merit to the case here and both are readily distinguishable.

In *Garland*, the email at issue was sent to "memorialize the terms of the parties'

5

settlement reached at today's mediated settlement conference" and expressly promised to "draft an agreement to circulate for review and signature." *Garland v. Orange Cnty.*, 900 S.E.2d 689, 693 (N.C. App. 2024). The Court of Appeals held that this language "contemplates a future agreement for signature" making it "at best an agreement to agree." *Id.* at 695. As an initial matter, the agreement here has none of the conditional language found in the email in *Garland*. And *Garland* is further distinguishable on two major grounds.

First, the *Garland* email arose from a court-ordered mediation, triggering a *requirement* under North Carolina law that mediated settlement agreements be "reduced to writing and signed by the parties against whom enforcement is sought or signed by their designees." *Id.* The Court of Appeals found that the email did not meet the statutory requirement for a "signed" writing. But no statutory formality applies to this case, which arises under federal law, in federal court, and after the parties agreed to settle the case among themselves, not as a result of mediation.

Second, in *Garland*, the plaintiff never accepted any version of the proposed agreement. The plaintiff proposed changes, allowed a deadline to lapse, rejected the defendant's renewal of its initial offer by counteroffering again, and then attempted to accept the initial draft only after having already rejected it. *Id.* In other words, *Garland* was a case in which the parties never agreed on anything, not even the material terms. Here, by contrast, SaveAround's December 30 email stated an *acceptance* of the Plaintiff's offer on three defined material terms, did not condition settlement on the execution of a future document, and there was never a rejection or repudiation through which it can reasonably be argued that there was some sort of counteroffer.

*Tapp* is even further afield. There, the parties exchanged emails about a bullet-pointed list of terms for a product license, which the initiating party expressly characterized as "serv[ing] as an interim and/or supplemental agreement until we have the agreements drafted by our lawyers

6

in place." *Tapp MFG, Inc. v. Speed UTV, LLC*, No. 1:24-CV-944, 2026 WL 207480, at *1 (M.D.N.C. Jan. 27, 2026). The court found this language made the email "at best an agreement to agree." *Id.* at *7 Indeed, the Court there held it was "less than that" because the responding party's purported "acceptance" added new material terms not in the original list, which were never addressed nor accepted. *Id.* at *5–7. And, like in *Garland*, the Court noted that the explicit terms of the email used the future tense and contemplated an "intent to enter into a license agreement in the future," rather than create one through the email exchange itself. *Id.* at *6.

None of these features is present here. SaveAround's December 30 email contained no "interim" designation, no conditional language about what the parties "will" do, and no indication about what the parties "intended" to do in the future. It stated that SaveAround "is willing to settle the case," present tense, on the three identified material terms offered. And unlike the responding party in *Tapp*, Mr. Hewett did not add new material terms in response to the December 30 email. Rather, he sent a formal agreement memorializing the three terms SaveAround had identified. The confidentiality provision Mr. Hewett included in that draft was, by SaveAround's own subsequent admission, "not part of [the] initial discussion."

Similarly, in *Howard*, the parties executed a memorandum of settlement but then jointly asked the court for time to "structure, finalize, and execute a formal settlement agreement" and submitted a *proposed order* allowing discovery to continue if finalization failed. *Howard v. IOMAXIS, LLC*, No. 18 CVS 11679, 2020 WL 2104823, at *8 (N.C. Super. May 1, 2020). The court treated those joint representations as "strong" evidence that neither side considered the memorandum binding, particularly as they "did not represent to the Court that a final settlement agreement had been reached." *Id.* Here, the parties did not jointly represent *anything* to the Court about the status of settlement, and if they did, Plaintiff would have insisted that the report

7

represent that the parties had reached an agreement on essential terms. What's more, *Howard* shows that SaveAround's subjective belief about whether the deal was final does not inform the objective inquiry as to whether a meeting of the minds occurred based on the parties' conduct.

SaveAround attempts to distinguish *Bryant*, *Petty*, *Dean*, *USA Trouser*, *Bell*, and *Wallens* by emphasizing that those cases involved signed writings, open-court endorsements, or joint representations to the court. But none of those cases holds that such formalities are *required* for a binding agreement. Apropos of *Howard*, the Fourth Circuit held in *Moore* that courts may enforce settlement agreements based on the parties' objective conduct and communications as evidence of their intent. *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 (4th Cir. 1991). Here, the December 30 email clearly reflects that the parties intended to resolve the litigation on the three specified terms. A disagreement as to a nonessential term does not defeat the agreement. As the *Moore* Court observed, collateral issues are separable from the essential terms of the underlying settlement. *See id.* (reasoning that an award of attorney's fees need not be fixed at the time of settlement and noting that the "negotiations concerning attorney's fees were separate and distinct from the settlement agreement" and that there was "no oral or written agreement that settlement was conditional on the resolution of the fee issue.").

So too here. SaveAround's Opposition dedicates substantial briefing to the proposition that confidentiality was material because Plaintiff's counsel called it "essential and material" in a comment to the January 6 draft. As an initial matter, the January 6 draft is not the December 30 agreement, and no part of *that* agreement contained any representation, by either party, that settlement would be conditional on the resolution of the confidentiality issue. *Moore*, 936 F.2d at 162. The facts of *Moore* and its holding are directly applicable here, particularly as SaveAround's own counsel had already conceded the point in the opposite direction when it

stated that the confidentiality terms "were not part of our initial discussion." *Cf. id.* ("Ms. Winner testified that she had been involved in other litigation against Mr. Crowell, where settlement was not conditioned upon resolution of attorney's fees. Ms. Winner stated that voting rights cases are routinely settled without the issue of fees being addressed contemporaneously."). That admission is telling. If confidentiality "was not part of" the "initial discussion" that produced the December 30 agreement, then it was not an essential term. As in *Moore*, the "offer to settle the lawsuit was not contingent on resolving the [confidentiality] issue[;] the [confidentiality] issue was merely [SaveAround's] after-the-fact argument to avoid the settlement agreement." *Id.*

Just as *Moore*, which SaveAround doesn't even address, despite its starkly parallel applicability to the precise circumstances presented here, SaveAround also points to distinctions without a difference in *Campbell*. In *Campbell*, the parties agreed on material settlement terms by phone and email. *Campbell v. Adkisson, Sherbert & Assocs.*, 546 F. App'x 146, 149 (4th Cir. 2013). They then exchanged drafts and disagreed about non-material provisions, choice of law and venue. *Id.* at 150, 153. The Fourth Circuit affirmed and held that disagreement over ancillary nonmaterial terms did not defeat settlement. *Id.* at 153. And just like here, because the Parties never signed the Plaintiff's draft in which Plaintiff's counsel made an extraneous comment regarding confidentiality, that comment cannot "guide the district court's inquiry into whether the parties reached a settlement" in the email exchange on December 30. *See id.* at 154. SaveAround tries to distinguish *Campbell* by noting that counsel there notified the court of settlement and sent a "final" copy for signature. But those are immaterial differences of procedure, not substance. The *Campbell* court enforced the agreement because the parties had agreed on all material terms by telephone, just as happened here by email.

SaveAround cannot argue simultaneously that (a) confidentiality was never part of the

deal, and (b) disagreement over confidentiality prevented a deal from forming. Like its concession on the propriety of dismissal here, the first proposition negates the second. At bottom, the January 6 comment referred to negotiations regarding the confidentiality provision's role within an unaccepted *draft written agreement*, not to the underlying settlement terms agreed to on December 30. *See Campbell* 546 F. App'x at 154 (rejecting similar argument); *Moore*, 936 F.2d at 162 n.1 (same). And Mr. Hewett ultimately dropped the confidentiality request entirely, accepting SaveAround's January 5 terms without it. That willingness to abandon the provision confirms it was not material to the settlement itself. *Campbell*, 546 F. App'x at 153 (noting party's "quick acceptance" of revisions to terms demonstrated those terms were not material).

Relatedly, SaveAround's repudiation argument is self-defeating. Simply advocating for a preferred provision in a draft document is not a "positive statement" that a party "will not or cannot substantially perform his contractual duties." *Millis Const. Co. v. Fairfield Sapphire Valley, Inc.*, 358 S.E.2d 566, 569 (N.C. App. 1987). Breach of an (unagreed to) nonmaterial term cannot serve as the basis for repudiation. *Id.* at 570. Mr. Hewett's counsel disagreed as to one nonmaterial term that was not part of the original agreement. Mr. Hewett never stated that he would refuse to perform any of the essential contractual obligations: he did not refuse to dismiss his claims, demand money, or walk away from the deal. Mr. Hewett has consistently sought to finalize the agreement and ultimately agreed to SaveAround's preferred nonmaterial terms. *Campbell*, 546 F. App'x at 153. The circumstances here are nothing like the repudiation cases SaveAround cites, which all involved unambiguous refusals to perform *material* contractual obligations. Negotiation over an ancillary term is not repudiation of a settlement.

## CONCLUSION

The motion should be granted and the parties' agreement enforced

10

Date:  March 31, 2026

*/s/ Ryan P. Duffy*
Ryan P. Duffy
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, North Carolina 28012
704-741-9399
ryan@ryanpduffy.com


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
a@perronglaw.com
PA Bar. No. 333687
*LR 83.1(e) Special Appearance Counsel*


## CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.2(f)(2)(c), the undersigned certifies that this brief does not exceed 10 pages and thus complies with this rule.

March 31, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

11

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

March 31, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

12